# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF OKLAHOMA

**FILED**

JUL - 9 2012

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT WESTERN DIST. OF OKLA.
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ] |
|            Plaintiff | ] |
| | ]  Case No. 07-CR-205-1 |
|    vs. | ] |
| | ]  Honorable Judge Friot |
| DENG HUAYI, | ] |
|       Defendant | ] |

## MOTION TO AMMEND/CORRECT OR REDUCE THE SENTENCE

## PURSUANT TO 18 U.S.C. §3582(c) OR IN ALTERNATIVE

## PURSUANT TO 28 U.S.C. §2255

**NOW COMES** the Defendant, DENG HUAYI, Pro Se, and respectfully moves this Honorable Court to grant his Motion for Sentence reduction of 1-2 levels, pursuant to Title 18 U.S.C. §3582(c) or in alternative 28 U.S.C. §2255, on grounds explored in the attached BRIEF/MEMORANDUM OF LAW.

Date: 7-6-12

Respectfully Submitted,

DENG HUAYI
Pro Se Petitioner

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,          ]

                Plaintiff          ]

                         ]          Case No. 07-CR-205-1

        vs.          ]

                         ]          Honorable Judge Friot

DENG HUAYI,          ]

              Defendant          ]

## BRIEF/MEMORANDUM OF LAW IN SUPPORT OF THE

## MOTION TO AMMEND/CORRECT OR REDUCE THE SENTENCE

## PURSUANT TO 18 U.S.C. §3582(c) OR IN ALTERNATIVE

## PURSUANT TO 28 U.S.C. §2255

1.    INTRODUCTION :

The Petitioner was arrested on MAY 01, 2012, indicted on two counts of False Acquisition of a Firearm, and Conspiracy to Possess with Intent to Distribute MDMA & Hydro marijuana and Cocaine powder, all in violation of Title 18 U.S.C. §922(A)(G) / 28 U.S.C. §846.

== PAGE 1 ==

The Petitioner through this motion **is not challenging in any way the Court's calculation of his Sentencing Guidelines Range, any plea stipulation regarding amount of drugs involved,** range and amount that he accepts as being correctly calculated in the plea agreement's context.

However, the petitioner is arguing that his attorney failed to represent him properly during the sentencing phase, as it will be shown heretofore, all in violation of his Sixth Amendment right to efficient assistance of counsel, pursuant to **Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052 (1984)**.

### PETITIONER PERSONAL CHARACTERISTICS :

The Petitioner is a 32 years old Chinese born citizen, and a Legal Permanent Resident in the U.S. for more than 20 years. In 1985, the petitioner's parents brought him in the U.S. where he remained until his arrest and conviction. He attended the Primary and Secondary School here in U.S. and went to PUTNAM CITY NORTH HIGH, in OKLAHOMA CITY. After graduation, he went to college, to Oklahoma State University ("O.S.U."), but for personal reasons he interrupted the studies there. His family and friends are all here in the U.S., and the Petitioner can attest that he is an American in all but immigration papers. He had culturally assimilated in the American culture, having lived almost all his life in the U.S. Aside from a few visits in China, he cannot identify himself in any way or manner with his birth country. Accordingly the Petitioner fits perfectly the criteria of **U.S.S.G. AMENDMENT 740** discussed later.

## 2.    THE GUIDELINE SENTENCE :

Petitioner pled guilty to the offense charged in the Indictment, and subsequently was sentenced on JULY 08, 2009. The sentence called for a 105 months incarceration in custody of Federal Bureau of Prisons.

The U.S. BUREAU OF PRISONS decided some 20 years ago, that all the Non-U.S.Citizens are ineligible to serve time in community confinement (e.g. Minimum Security Institutions or Community Confinement Centers "CCC"), solely by reason of their non-citizen status. This status would have the defendant assigned to a Low Security prison, more specifically to a For-Profit Private Prison, which is a substantially more punitive enviroment, as it will be shown in a later chapter.

The Government would be inclined to answer that,generally, a defendant's alienage would be a prohibited reason to rely on at the sentencing, specifically when decideing a downward  departure like in the instant motion.

This argument relies on a sweeping application of those cases in which consideration of "collateral consequences" of defendant's alienage is held to be inappropiate, collateral consequences that are not involved, nor invoked, in this petition.

It actually extends, if one allows such a strict reading, these
holdings into a strong presumption against consideration of **any**
consequences of alienage whatsoever. Such interpretation will do
a great disservice to the criminal justice as a whole.

A careful reading of the decision of other courts that have
considered the interaction of alienage and sentencing, reveals that
the effects of alienage **should be considered** no differently from
any other factor that is neither prohibited nor discouraged, **or**
encouraged : namely when those effects **"were not taken into account
by the Sentencing Commission** in divising the guideline sentence,
and that an "unusual situation" may lead to an warranted departure.


3.    **THE DEPARTURE FRAMEWORK :**


This Honorable Court may depart downward if it finds that in
this case "an aggravating or mitigating circumstances exists that
was not adequately taken into account/consideration by U.S.S.G."
in formulating the guidelines, and that should result in a sentence
different from that prescribed", see **Title 18 U.S.C. §3553(b)**.


This Court is now free to interpret the Guidelines as it may
please, since the Guidelines are now advisory and not mandatory,
see **U.S. v. Booker, 543 U.S. 220 (2005)**.

In such atypical case, the Court may consider whether such a departure is warranted or not, see **U.S.S.G. § Chapter 1, Pt.A(b)**.

Early in the guidelines regime, downward departures were in fact discouraged by the [wrong] presumption that "almost all possible factors must have already been taken into consideration by the Sentencing Commission, if only implicitly, see **U.S. v. Restrepo, 999 F.2d 640,644 (2nd Cir.1993)**. However, the Supreme Court has reemphasized the Commission's own instructions : "aside from a few prohibited factors, it does not intend to limit the kinds of factors ,whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in a unusual case", **Koon v. U.S.,116 S.Ct.2035,2044 (1996)**.

4.   THE IMPACT OF PETITIONER'S NON-CITIZEN STATUS
     ON THE SENTENCE IN IT'S ENTIRETY :

A)   PETITIONER DESIGNATION TO A PRIVATE PRISON :

The Petitioner is currently incarcerated at EDEN DETENTION CTR, a For-Profit Private Prison owned/operated by the CORRECTIONS CORP. OF AMERICA, pursuant to a contract with B.O.P. to house Low Security Sentenced Criminal Aliens. Such contracts to house aliens inmates, were devised as a cost cutting measure, and are based on the B.O.P. P.S. 5111.01 "INSTITUTION HEARING PROGRAM".

== PAGE 5 ==

These private prisons, as recent deadly riots can attest, are substandard in comparison with the facilities that are operated by the B.O.P. As an example we can enumerate few major differences :

1. Prison Overcrowded, running at 115% capacity (See Exhibit_1_);
2. Lack of Educational/Vocational programs;
3. Lack of proper Health Care (reason for the deadly riots at the private prisons in Texas and Mississipi.
4. Unpalatable and scarce food;
5. Rude and violent staff (High Staff Turnover rate);
6. No Residential Drug Program Treatment offered;
7. Increased security measures to resemble a Medium facility;

The B.O.P. PS 5111.01 raises grave concerns. Should a state have adopted the B.O.P. policy of assigning aliens to more restrictive and punitive conditions of confinement, solely by reason of their alienage, it might not survive scrutiny under the 14th Amendment, see **Nyquist v. Mauclet, 432 U.S. 1,7, 97 S.Ct. 2120 (1977)**, see e.g. **Yick v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064 (1886)**. The federal policy may also violate this nation's commitments under the I.C.C.P.R. ("International Convenant on Civil and Political Rights), see e.g. DEC 16,1966,999 U.N.T.S. 171, to which the U.S. became signatory and was ratified by the U.S. Congress in 1992. ARTICLE 2 of I.C.C.P.R. expressily prohibits discrimination on the basis of "status", including alienage...a prohibition that, **ironically,** the United States was instrumental in including in the convention's intial drafts.

The HUMAN RIGHTS COMMITEE charged with enforcing the convention, has repeatedly made clear that the prohibition of discriminating is a guiding principle for the I.C.C.P.R. as a whole, and should inform the application of all of its provisions, including ARTICLE 9, that governs DETENTION; see HUMAN RIGHTS COMMITEE,GENERAL COMMENT 18,37[th] SESS,U.N. GAOR, 45th SESS, SUPP.No. 40,U.N. DOC. A/45/40 (1990).

Although the United States sought to "clarify" that it would be bound by it's own understanding of discrimination, rather than that of the international community, the HUMAN RIGHTS COMMITEE has the ultimate authority to decide whether the parties clarifications or any reservations have any effect, see MANFRED NOWAK,THE ACTIVITIES OF THE U.S.HUMAN RIGHTS COMMITEE : 16 HUM.RTS.L.J. 377,180 (1995). Given the centrality of non-discrimination to the I.C.C.P.R., it is unlikely that the commitee would allow the U.S. to carve out it's own separate definition of it's obligations under the international law. Additionally, a "ratified treaty **is the law of the land** as an Act of Congress is..", see **Flores-Nova v. Attorney General of U.S.**, **652 F.3d 488 (3rd Cir.2011).**

Here in this case the defendant's rights under the I.C.C.P.R. are being violated by the federal government. He is being placed into a more punitive condition of detention, as a "**cost-cutting measure**", fact alone that would justify a downward departure, to an extent that This Court deems necessary, fair and in interest of justice.

**B)** **PETITIONER IS NOT ELIGIBLE FOR HOME DETENTION**
**FOR UP TO 1 YEAR ACCORDING TO 18 U.S.C. §3624 :**


The Congress, in 2007, amended an existing law that pertains to the execution of a federal sentence, by passing the SECOND CHANCE ACT OF 2007.

The SECOND CHANCE ACT provides that the BUREAU OF PRISONS "shall to such extent practicable, ensure that a prisoner...spends a portion of the final months of a sentence, not to exceed one year, under conditions that will afford that prisoner a reasonable and fair opportunity to adjust and prepare for the reentry of that prisoner into the community...", see **Title 18 U.S.C. §3624(c)**;

Because the Petitioner is a Chinese national (therefore not a U.S. Citizen) the defendant will be deported at the conclusion of his sentence. That threat of deportation makes him ineligible for "Half-Way House", in where can spend up to one year, namely the last year of detention.

Therefore,as a direct result of his alienage, the Petitioner will be precluded from a one year reduction on his custodial sentence (unlike a U.S.Citizen), all in addition to the fact that he will not be afforded the chance to prepare for reentry in the society, a traumatic step that an inmate suffer after a long period of incarceration.

Several courts have found downward departure appropiate when a defendant's non-citizenship is **more** than collateral to his or her sentence, but instead threatens to change the nature of the scope of the sentencing.

More specifically, the D.C.Circuit has held that where an deportable alien's sentence would be more severe solely because of his alien status, a downward departure may be deemed proper, see **U.S. v. Smith, 27 F.3d 649,655 (D.C.Cir.1994).**

The Seventh Circuit, an otherwise very **conservative circuit**, has likewise held that there is "no reason to believe that the Sentencing Commission took a defendant's residency status into account in setting the base offense level for an offense that does not intrinsically involve un-authorized presence in this country, and in such case, the District Court is **free to consider whether** [the defendant's] **status as a deportable alien has resulted in an unusual or exceptional hardship in his conditions of confinement,** see **U.S. v. Farouil, 124 F.3d 838 (7Th Cir.1997),** see also the e.g. **U.S. v. Gonzales-Portillo, 121 F.3d 1122,1125 (7Th Cir.1997)**("special status of alienage may be appropiate ground for the departure downward if the alien status is not an inherent element of the crime he is charged with..."). Accordingly, This Honorable Court has the examples and jurisprudence cited above as examples on which to base an eventual ruling for a downward departure.

## C) RESIDENTIAL DRUG ABUSE PROGRAM AND INCENTIVE UNDER 18 U.S.C. §3621(e) IS NOT AVAILABLE TO ALIENS :

Pursuant to 18 U.S.C. §3621(e), the U.S.BUREAU OF PRISONS may reduce the sentence of a non-violent offender, for up to one year, if that offender has successfully completed a Residential Drug Treatment Program.

The Congress, in 1994, directed the BUREAU OF PRISONS to make appropiate substance treatment programs available for each prisoner the bureau determines has a treatable condition of substance abuse or addiction, see Title 18 U.S.C. §3621(b).

As an "[i]ncentive for succesful completition of the treatment program", the 18 U.S.C. §3621(e)(2) provided:

> The period a prisoner convicted of a non-violent offense remains
> in custody after succesfully completing a treatment program may
> be reduced by the BUREAU OF PRISONS, but such reduction may not
> be more than **one year** from the term the prisoner must otherwise
> serve..."

Section §3621(e)(2)(B) was enacted without an explicit requirement that the prisoner complete a "community-based treatment phase" in order to be eligible for a sentence reduction upon succesful abuse program treatment completion.

Therefore a plain reading of the Congress intentions was that **all inmates** (that fit the criteria) be afforded treatment for their substance abuse problem, and also a sentence reduction as an incentive for completition, regardless of alineage,citizenship or nationality.

However, after Title 18 U.S.C. §3621(e)(2)(B) was enacted by the Congress, the U.S.BUREAU OF PRISONS promulgated their own rule that set the regulation and implementation of the Congress law, namely the B.O.P. PROGRAM STATEMENT 5330.10.

B.O.P. PS 5330.10 established the requirement of eligibility that were required for the Drug Abuse Treatment Program, that included "**community transitional services**", namely a community based treatment phase, as one major mandatory component of the program mandated by the Congress, component without which a "succesfull completition" wasn't possible.

The B.O.P. PS 5330.10 became effective on MAY 17, 1996 after publication in the Federal Register, and was codified as an official rule at **28 C.F.R. §550.58**, and provided that qualifications for the "early release" under 18 U.S.C. §3621(e)(2)(B) includes the..... "subsequent transitional services in a **community based** program" (i.e. either home detention or C.C.C.).

The same language can be found in B.O.P.PS 5330.10,CHAPTER 6, Page 2 : "..an inmate **must be able to participate in community-** **-based programs** so as to complete the transitional services component of the drug treatment program/"

Although the Congress was aware of the fact that approximately 25-30% of the federal inamtes are aliens/Non-U.S.Citizens, it did not exclude  them from consideration under the program and it's incentive. However, the B.O.P. took it upon itself into excluding all aliens from the participation in the program (and its incentive) by inserting (inventing rather) the "community based component" that aliens cannot satisfy nor qualify, due to the fact that they will be turned over to the I.N.S.,at the conclusion of their federal sentences, for deportation.

The Petitioner definitely falls into the category of inmates that are excluded from consideration, all based on his alienage, and it is his contention that this fact alone (or in conjunction with the other presented) qualifies him for a downward departure under the "unusual situation" contemplated by the U.S.S.G.§5K2.0.

The Petitioner stands accused and convicted of a drug offense, a raising problem that Congress sought to cure when it enacted the Drug Program. While the Petitioner acknowledges the fact that the B.O.P. is free to craft their own rules and regulations, it went too far in excluding 30.000 inmates from the program. Such a big determination should have been left for the consideration and vote of the Congress. Lastly, the petitioner's attorney should have brought forth this argument at sentencing requesting a downward departure, regardless of the chances of obtaining it or not.

**PAGE 12**

**D)     CULTURAL ASSIMILATION :**


The Petitioner is born in China, but he came to the United States when he was 5 years old. He went to school here, from primary to high school. Meantime he obtained his PERMANENT RESIDENT CARD (commonly known as the GREEN CARD), and he has maintained legal status up to the date of arrest, indictment and sentence.

In support of the Petitioner's request for a downward departure based on his "cultural assimilation" into American society, a resolution was passed by the U.S.Sentencing Commission, namely **AMENDMENT 740**, on NOVEMBER 02, 2010.


AMENDMENT 740 was passed by enacting a downward departure for Illegal Re-Entry crimes, by amending U.S.S.G.§2L1.2. While the Petitioner was not convicted of a immigration crime, he is requesting this Court to apply the AMENDMENT 740 via U.S.S.G.§5K2.0, section that can be used to depart downward on grounds that are "not adequately taken into consideration in determining the range.".

The AMENDMENT 740 was passed a year **after** the petitioner was sentenced, therefore the Court has authority under 18 **U.S.C §3582(c)** to modify the sentence, based on the "guidelines that were lowered by the U.S.S.G. according to **Title 28 U.S.C. §994(o).**

Title  28 U.S.C. §994(o) gives the U.S.Sentencing Commission the power to amend the sentencing Guideline. When the U.S.Sentencing Commission lowers the guideline for a particular crime, or to add certain grounds for departure,the Congress have given the Courts the necessary jurisdiction to act and re-sentence the offenders that could have beneficiated of the lower sentence as if they could be sentenced anew. That was codified as Title 18 U.S.C.§3582(c)(2) **"Imposition of Sentence of Imprisonment / Reducing a Term of Imprisonment after the Imposition of the Sentence".**

The amendment in question, has been enacted to give the Judges the power to depart downward, at their discretion, if the defendant about to get sentenced meets certain criteria. The departure is to be granted based on "Cultural Assimilation", to the segment of the defendants that : **(1)** have lived in the U.S. for a long period, or since childhood; **(2)** the defendant has extensive ties with the U.S. like family, relatives; **(3)** went to school in the U.S. ; **(4)** the defendant has assimilated into the American culture and way of life; **(5)** the defendant will not pose any danger to the public; **(6)** the extent of family ties outside of the U.S.; **(7)** the seriousness of the defendant criminal history;

The Petitioner came to the U.S. at 5 years old, continously lived here, went to school, and all his close family lives here. It is the Petitioner position that the downward departure enacted by the U.S.S.G. titled "Cultural Assimilation" fits his case and that this Court can grant him a 1-2 level downward departure via U.S.S.G. §5K2.0.

## 5. UNUSUAL CONDITIONS OF CONFINEMENT :

In imposing a sentence, the Court must consider not only the lenght of the sentence, but also the conditions under which it will be served, see Title 18 U.S.C. §3553 et.al., that among others dictates that the Petitioner's sentence must be "sufficient, but not greater than necessary."

Downward departure is warranted for those cases which fall outside the "heartland" of the guidelines design, and the Court through it's imense discretionary power can depart downward, power that affords a "sensible flexibility" to insure that atypical cases are not shoe-horned into a guideline range that is only formulated for typical cases, <u>U.S. v. Rogers,972 F.2d 489(2nd/1992)</u>.

The Government, as an responsive argument to this petition, would suggest that in determining whether the [petitioner's] sentence will be "greater than necessary", the Court cannot consider <u>where</u> that sentence will be served.

However, prison camps (where the defendant should be) and the medium security type prison (where the defendant is), are very different in kind, and they can be interpreted as having a great impact on whether petitioner's sentence is "greater than necessary" as it was shown here that the defendant will serve more time and in an more punitive enviroment.

⊷⊷ PAGE 15 ⊷⊷

Whether a departure is justified in a particular case may be "determined in large part by comparison with the facts of other guidelines cases, see **Koon v. U.S., at 2047**. This comparison may be drawn from this Court's "day-to-day experience in criminal sentencing", see **Koon at 116 S.Ct.2046-47**, but decisions of other courts faced with similar cases may be also instructive. It is the Petitioner's position that the guidelines did not take into account the possibility that a defendant's alienage might sigificantly transform the severity of the entire lenght of his sentence, which in this case can be up to 2 years.

The Petitioner is serving his time in a For-Profit Prison, only because of a sham policy (IHP POLICY), under the guise of completing the INS procedures. The truth is totally different. All the aliens are seen by the I.N.S. only weeks before the release date, or in a lot of cases, only after the release, when the alien can spend months in additional incarceration in a. Immigration Jail, period that is outside the criminal sentence.

Both the inappropiate severity of the sentence, and place of the execution of it, when, coupled with the fact that it is due **solely** to Petitioner's Non-Citizenship, make a downward departure proper in this case, and the Petitioner's attorney should have brought this argument to the Court's attention at the time of sentencing . by requesting a downward departure or a variance.

6.  **U.S.ATTORNEY GENERAL MEMORANDUM TO FEDERAL PROSECUTORS CONCERNING THE CASES OF DEPORTABLE CRIMINAL ALIENS :**

On April 28, 1995, the U.S.Attorney General issued a Memorandum to all federla prosecutors (attached as Exhibit 2), titled as "DEPORTATION OF CRIMINAL ALIENS".

In this memorandum, the U.S.Attorney General gives the authority to the territorial U.S.Attorneys to offer a 1-2 levels downward departure under teh **U.S.S.G.§5K2.0**, in exchange to alien's acceptance or concession of departability, and agreement to accept a final order of removal.

The Petitioner (during the Court ordered Pre-Sentence investigation) admitted to the Probation Officer that he is not a U.S.Citizen, that he is a Chinese national and that may be deportable. Therefore, according to **Title 8 U.S.C. §1228(c)"Presumption of Deportability"**, the petitioner should have been offered the 1-2 levels departure.

A District Court has the authority to depart downward based on defendant's willingness to consent to depaortation, see **U.S. v. GALVEZ-FALCONI, 174 F.3d 255 (2nd Cir.1999)**, and the absence of the Government's consent **doesn't preclude a downward departure** under the Guidelines, see **U.S. v. Rodriguez-Lopez, 198 F.3d 773 (9Th Cir.1999)**. see also **U.S. v. Mignot, 184 F.3d 1288 (11Th Cir.1999)**.

## 7.   CONCLUSION :

The Petitioner respectfully request that This Honorable Court grant his motion for sentence reduction, based on the arguments that were brought in this petition. The Court has the power to re-sentence the Petitioner under **18 U.S.C. §3582(c)(2)**, by adopting U.S.S.G. **AMENDMENT 740** via §5K2.0. In alternative, the Court may grant the Petitioner's motion under **28 U.S.C. §2255**, by finding that his counsel was ineffective at the sentencing phase. The Court may also calculate the 1 year limitation, by calculating the start date under the **28 U.S.C. §2255(f)(4)**, as the Petitioner discovered all the cases and arguments in this motion just recently after an long and extensive legal research performed with limited resources.

Date: 7-6-12

Respectfully Submitted,

DENG HUAYI

Pro Se Petitioner

Reg #16835-064

c/o EDEN C.I.

**ATTACHEMENT / EXHIBIT 1**

KI/SSS Key Indicators Strategic Support System

**Date of data:** 2/2010

**Institution:**EDEN CI

**Region:** SCR **Institution Security Level:** LOW

**C.E.O.:** Peter Whitworth , Senior Secure Institution Manager

**Phone #:** (Commercial)                    (FTS)

---

| | |
|---|---:|
| **Inmates in Population (excluding holdovers and in−transits):** | 1540 |
| **Inmates in Holdover Status:** | 0 |
| **TOTAL NUMBER OF INMATES (including holdovers):** | 1540 |
| Rated Capacity | 1355 |

---

Click here for Important Target Information

 The Population Count **excludes** any WITSEC inmates.

 The frequencies on the following pages relate to the **Inmates in Population (excluding holdovers and in−transits)** figure given above.

**ATTACHEMENT / EXHIBIT 2**



# Office of the Attorney General
# Washington, D.C. 20530

April 28, 1995

## MEMORANDUM TO ALL FEDERAL PROSECUTORS

### FROM: THE ATTORNEY GENERAL

### SUBJECT: DEPORTATION OF CRIMINAL ALIENS

### I. INTRODUCTION

This Administration is committed to effecting the deportation of criminal aliens from the United States as expeditiously as possible. You can make a major contribution to this effort by effectively using available prosecutive tools for dealing with alien defendants.

This memorandum provides Federal prosecutors with a general overview and policy guidance with respect to: (1) using stipulated administrative deportation orders in connection with plea agreements; (2) providing for deportation as a condition of supervised release under 18 U.S.C. § 3853(d); and (3) seeking judicial deportation orders pursuant to the recently enacted judicial deportation statute, 8 U.S.C. § 1252a(d).

All deportable criminal aliens should be deported unless extraordinary circumstances exist. Accordingly, absent such circumstances, Federal prosecutors should seek the deportation of deportable alien defendants in whatever manner is deemed most appropriate in a particular case. Exceptions to this policy must have the written approval of the United States Attorney. In cases handled exclusively by one of the Department's litigating divisions, an exception to the policy must have the written approval of the appropriate Assistant Attorney General or Deputy Assistant Attorney General.

### II. STIPULATED ADMINISTRATIVE DEPORTATION IN PLEA AGREEMENTS

A stipulated administrative deportation is predicated on the alien's admission of alienage and deportability. It also requires an alien's waiver of the right to an administrative hearing before an immigration judge, an administrative appeal, and judicial review of the final order of deportation. Generally, these admissions and waivers must be accomplished with advice of counsel. Defendant's counsel must file an appearance with the immigration court, and the defendant will be served with and INS "Order to Show Cause" (the charging document in an administrative deportation proceeding). After the alien stipulates to deportation, the stipulation, the Order to Show Cause, and counsel's notice of appearance must be presented by INS to an Immigration Judge, who will then issue the deportation order.

A stipulated order can be based on the conviction for an offense to which the alien defendant will plead guilty, provided it is one of the kinds of offenses that causes the alien to be deportable under 8 U.S.C. § 1251(a).[1] Alternatively, a stipulated administrative deportation order can be based on any of the numerous other grounds for deportation set forth in 8 U.S.C. § 1251(a) which is applicable to the alien defendant (including certain prior state or federal criminal convictions, entry without inspection, or

violation of nonimmigrant status, 8 U.S.C. § 1251(a)(1)(B) and (C)) even if they are entirely unrelated to the offense to which the alien defendant will plead guilty. These provide an effective basis for securing stipulated administrative deportation in connection with plea agreements.

To obtain such stipulations, prosecutors may agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for the alien's concession of deportability and agreement to accept a final order of deportation. Such downward departure is justified on the basis that it is conduct not contemplated by the guidelines. *See* U.S.S.G. § 5K2.0.

To ensure that an alien defendant is, in fact, deportable and that deportation can, in fact, be accomplished, prompt and close coordination with INS is required. INS has been directed to provide prompt and timely assistance to prosecutors seeking to effect the deportation of criminal aliens. Accordingly, prior to engaging in plea negotiations with an alien defendant, a prosecutor must notify the designated INS contact.[2] INS will then advise the prosecutor whether the alien is subject to deportation, provide any necessary documents to obtain a stipulated deportation order, and serve an order to show cause on the alien. Prior concurrence of the designated INS contact is required before such a plea agreement is entered.

Plea agreements should, by their terms, contain the alien defendant's acceptance of an administrative order of deportation prior to or at the time of sentencing.[3] In addition, the agreement must provide that the defendant knowingly waives the right to any appeal or other challenge to the administrative deportation order, and that the defendant understands that his agreement to accept a deportation order will result in immediate deportation from the United States at the conclusion of any period of incarceration imposed as a result of the offense that is the subject of the plea agreement. Sample stipulations to administrative deportation for inclusion in plea agreements are attached at Appendices B and C.

When administrative deportation is merely a collateral consequence of a guilty plea, the court is not required, pursuant to Rule 11, F.R.Cr.P., to advise a defendant of the possibility of deportation. However, when a defendant stipulates to deportation as part of a plea agreement, deportation becomes a direct consequence of the plea and, as noted above, may be the basis for a recommendation of a downward departure under the sentencing guidelines. Accordingly, it is imperative that when such a plea is entered, prosecutors urge the court to engage the defendant in a meaningful plea colloquy to establish a clear record concerning the factual basis for alienage and deportability and that the alien knowingly (1) waives his right to a deportation hearing before an immigration judge, (2) accepts the deportation order and understands that he will be deported from the United States at the conclusion of his incarceration, and (3) waives any and all rights to appeal, reopen, or challenge the deportation order in any way.

In addition, at sentencing, prosecutors also should consider requesting the court to provide for deportation as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d). (See discussion below.) The benefit of this approach is that if the alien subsequently reenters this country after deportation, he would be subject to immediate incarceration for violating the terms of supervised release, in addition to being subject to another criminal prosecution for reentry after deportation.

## III. DEPORTATION AS A CONDITION OF SUPERVISED RELEASE

### A. Introduction

Where an alien defendant is unwilling to stipulate to deportation, and thus is not the beneficiary of any plea agreement, a provision of the sentencing Reform Act may be used in certain circumstances to

effect the defendant's deportation. Under 18 U.S.C. § 3583(d), a sentencing court has the authority to provide for the deportation of an alien defendant as a condition of supervised release. In relevant part, the statute provides that,

(i)f an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.[4]

## B. Background

Two courts of appeals have arrived at conflicting interpretations of this provision. In *United States v. Sanchez,* 923 F.2d 236 (1st Cir. 1991), the court held that section 3583(d) does not authorize a sentencing court to enter a judicial order of deportation, and thus does not deprive an alien defendant of his right to an administrative hearing provided by the Immigration and Nationality Act (INA). Instead, the court held that the statute only permits a district court to order that the alien defendant be delivered to INS for deportation proceedings. *See also United States v. Ramirez,* 948 F.2d 66 (1st Cir. 1991) (Breyer, C.J.). In contrast, the Eleventh circuit held in *United States v. Chukwura,* 5 F.3d 1420 (11th Cir. 1993), *cert. denied,* 115 S. Ct. 102 (1994), that section 3583(d) *does* authorize a district court to order an alien defendant deported as a condition of supervised release without affording the defendant an opportunity for recourse to the administrative procedures set forth in the INA. The decisions in both Sanchez and Chukwura were consistent with the positions taken by the United States in the respective cases. The petitioner in *Chukwura* noted these inconsistent positions of the United States in the petition for a writ of certiorari that he filed in the United States Supreme Court.

In light of those inconsistent positions, the Solicitor General, in consultation with the Criminal Division, the INS, the Attorney General's Advisory Committee of United States Attorneys, and other components of the Department, undertook a thorough review of the legal issue presented. As a result of that review, the Department concluded that section 3583(d) does not authorize a district court to order an alien defendant deported without recourse to the procedures established by the INA. The Department set forth that new position in its response to Chukwura's certiorari petition.

## C. Usefulness of the provision

Unlike the First Circuit, however, we do not believe that section 3583(d) relegates a sentencing court to the relatively passive role of merely turning an alien defendant over to INS for deportation proceedings. The statute expressly authorizes a District Court to "provide, as a condition of supervised release," that the alien defendant be deported and remain outside the United States. Although deportation must be accomplished under the established procedures of the INA, it remains part of a judicial order that an alien defendant violates at his peril.

Viewed in this light, section 3583(d) can be used as an effective tool in obtaining the removal of criminal aliens. Indeed, a condition of supervised release requiring a defendant to be deported and to remain outside the United States has several important consequences:

1. An alien defendant subject to such an order violates a condition of his supervised release unless, at the end of his period of incarceration, he is under a final order of deportation and is ready for deportation. If the alien defendant resists or delays deportation at the end of the incarceration period, he may be subject to reincarceration or modification of the conditions of his supervised release.

2. An alien defendant subject to a Section 3583(d) order who is deported and then returns to

the United States violates a condition of his supervised release and is subject to reincarceration, pursuant to 18 U.S.C. § 3583(e)(3). This consequence should provide a deterrent against subsequent illegal entry and will also save prosecutorial resources by eliminating the need for a separate prosecution for reentry after deportation.

3. Delays in the immigration process will be reduced if, in light of the incentives provided by section 3583(d), criminal aliens consent to administrative deportation rather than remain in jail to contest deportation.

### D. Procedures

To make effective use of section 3583(d), Federal prosecutors should ensure that probation officers have sufficient information to include in presentence reports: (1) a statement of the reasons why a particular alien defendant is deportable and (2) a recommendation that the sentencing court provide as a condition of supervised release that the defendant be deported. and remain outside the United States. When the presentence investigation report does not contain such a recommendation, the prosecutor should file and/or make such objections as are necessary in order to preserve the issue for sentencing and possible appeal. At sentencing, the prosecutor should recommend directly to the district court that deportation be a condition of supervised release.

A Federal prosecutor prosecuting any alien should inform INS District Counselor the designated INS contact as soon as possible after the defendant is indicted or charged. Timely coordination with INS will allow INS to provide information to the probation officer on the deportability of the defendant, and to complete deportation proceedings against deportable federal inmates while they are serving their sentences.

There may be cases in which, through no fault of the alien, a final deportation order has not been entered by the time the alien's term of imprisonment ends and his period of supervised release is scheduled to begin. In other cases, an alien prisoner may obtain relief from deportation prior to the beginning of his period of supervised release. In these situations, Federal prosecutors generally should consent to a modification of the terms of supervised release, after consultation with INS District Counsel. INS, however, may choose to detain an alien who is still subject to deportation.

### E. The Situation in the Eleventh Circuit

Because the Eleventh circuit took a different view of section 3583(d) in *Chukwura,* and because the Supreme Court denied review, district courts within the circuit are not barred by circuit law from ordering deportation as a condition of supervised release, independent of the Attorney General's authority under the INA. Because *Chukwura* does not *require* imposition of such an order, however, the question will arise only when a district court provides for deportation as a condition of supervised release and further seeks, *sua sponte,* to order deportation without regard to the Attorney General's invocation of procedures under the INA. In light of the Department's position, prosecutors in United States Attorney's Offices in the Eleventh circuit should not recommend --and indeed should oppose --a sentencing court's entering of an order providing for deportation as a condition of supervised release, to the extent the court's order would itself require that the alien be deported.

## IV. JUDICIAL DEPORTATION

### A. Statutory provisions

On October 25, 1994, the President signed into law the Immigration and Nationality Technical

Corrections Act of 1994 ("Act"). The Act contains a new judicial deportation provision, to be codified at 8 U.S.C. § 1252a(d). section 1252a(d) (1), provides that a United States District Court can enter a judicial order of deportation at the time of sentencing against an alien whose criminal conviction causes such alien to be deportable under 8 U.S.C. § 1251(a)(2)(A),[5] if such an order has been requested by the United states Attorney with the concurrence of the Commissioner of INS.

To utilize 8 U.S.C § 1252a(d)(2), the United States Attorney must, prior to commencement of trial or entry of a guilty plea, file with the district court and serve upon the defendant and INS a notice of intent to request judicial deportation. A sample notice of intent is attached at Appendix E. In addition, at least 30 day prior to the date set for sentencing, the United States Attorney must file a charge containing factual allegations regarding the alienage of the defendant and identifying the crime or crimes which make the defendant deportable under 8 U.S.C. § 1251(a)(2)(A). This document requires the concurrence of INS. Sample charging documents are attached at Appendices F, G, and H.

At sentencing, an alien is entitled to a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the government. In determining whether to enter a judicial deportation order, the court can only consider evidence that would be admissible in administrative deportation proceedings. [6] The court may order deportation if the Attorney General demonstrates that the alien is deportable under the INA.[7]

### B. Special Considerations

The judicial deportation statute contains ambiguities which could make implementation problematic. The Department will propose corrective legislation as needed.

#### (1) Authority

The statute does not make clear whether the court's authority to order judicial deportation is limited to the current conviction or convictions which cause the alien defendant to be deportable under 8 U.S.C. 1252a (2) (A), and for which the alien is about to be sentenced, or whether the court can order judicial deportation at sentencing for any federal conviction, if the alien has any prior state or federal conviction which causes the alien to be denortable under § 1252a(2)(A). Because the statutory language refers to sentencing upon a conviction which "causes such alien to be deportable," Federal prosecutors should proceed on the more limited premise that Congress intended to limit judicial deportation authority to those convictions for which the alien is before the court for sentencing.

#### (2) Appeals of Judicial Deportation Orders

In the absence of any clarifying legislative history, it is unclear whether the appeal procedures in the statute contemplate a unitary or bifurcated appeal. The statute provides that the appeal of a judicial deportation order, or of the denial of such an order, "shall be considered consistent with the requirements described in (8 U.S.C. § 1105a)" relating to the judicial review of administrative deportation orders. Section 1105a, in turn, incorporates the provisions and procedures prescribed by chapter 158 of Title 28, United States Code, relating to the review of orders of federal agencies. Although one might infer that Congress intended to separate the appeal of a judicial deportation order from the alien defendant's criminal appeal, the Department's view is that, just as a forfeiture order that accompanies a criminal conviction and sentencing is reviewed as part of the criminal appeal, appellate review of a judicial deportation order also should be accomplished as part of the related criminal appeal, not as a separate civil appeal.

Since the filing deadlines under 8 U.S.C. § 1105a are significantly longer than the deadline for filing a notice of appeal in a criminal case, we must anticipate that contested judicial deportation proceedings may produce independent notices of appeal. In such situations, prosecutors should, wherever possible, move to consolidate any appeal of a judicial deportation order with the defendant's appeal of his criminal conviction and any other aspect of the sentence.

### (3) Res Judicata/Collateral Estoppel

The statute expressly provides that denial of a request for a judicial order of deportation, *without* a decision on the merits, does not preclude administrative deportation proceedings against the alien on the same ground of deportability or any other ground of deportability. However, in the absence of extensive case law on the issue, it is unclear whether an adverse judicial decision, *on the merits,* as to alienage, deportability, or relief from deportation, would preclude further administrative deportation proceedings based on principles of res judicata/collateral estoppel. Because of this uncertainty, it is extremely important that Federal prosecutors consult closely with INS on any judicial deportation case to avoid the possibility of obtaining an adverse judicial ruling that might bar administrative deportation.

### C. Implementing Judicial Deportation

### (1) General Concerns

In order to maintain a consistent national immigration policy, close questions relating to alienage, deportability, and particularly relief from deportation should be initially decided in administrative proceedings, followed by judicial review, rather than having these issues addressed first in criminal cases. Therefore, in view of the Department's responsibility to administer and enforce immigration laws, and considering the ambiguities in the judicial deportation statute, prosecutors should not seek judicial deportation if the district courts necessarily will become involved in contentious immigration issues. Accordingly, requests for judicial deportation should be made only if the alien defendant does not have lawful permanent residence, and where the offense[s] for which the alien is to be sentenced is:

(A) any "aggravated felony," as defined in 8 U.S.C. § 110l(a)43;[8] or:

(B) a serious crime of violence that indisputably involves moral turpitude -i.e, voluntary manslaughter, kidnapping, sexual abuse, arson, robbery, burglary, or aggravated assault-committed within five years of entry, but which does not amount to an "aggravated felony," since the anticipated sentence of imprisonment, under the sentencing guidelines, will be more than one year, but less than five years; *or*

(C) two or more serious crimes of violence that indisputably involve moral turpitude--, voluntary manslaughter, kidnapping, sexual abuse, arson, robbery, burglary, or aggravated assault --not arising out of a single scheme, committed any time after entry, but which do not amount to "aggravated felonies," since the anticipated sentence, under the sentencing guidelines, will be less than five years.

With regard to (B) and (C) above, although 8 U.S.C. § 1251(a)(2) could encompass any "crime involving moral turpitude," it is important that prosecutors not seek judicial deportation in situations where the courts may be required to define the limits of that term. Such determinations are better made in administrative proceedings.

For similar reasons, a judicial order of deportation should not be sought if the alien has any colorable claim for relief from deportation. A request for a judicial order of deportation should

be .ithdrawn if it appears that a colorable claim for relief from deportation exists. In this regard, you should be aware that an alien aggravated felon without lawful permanent residence (green card) status would generally be ineligible for any form of relief from deportation.

Further, if a federal prosecutor, as part of plea negotiations, agrees not to seek judicial deportation, such plea agreement shall not bar or otherwise affect a pending or future administrative deportation proceeding against the defendant by INS.

### (2) Stipulated Judicial Deportation

Under the Department's interpretation of the statute, stipulated judicial deportation should be sought only if the offense to which the alien defendant will plead guilty causes him to be deportable under 8 U.S.C. § 1251(a)(2)(A). As in stipulated administrative deportation situations, prompt and close coordination with INS is necessary. Thus, prior to engaging in plea negotiations with an alien defendant, prosecutors should contact the designated INS contact for an assessment of the defendant's alienage, deportability, and the possibility he will claim relief from deportation. Sample stipulation language for inclusion in plea agreements is attached at Appendix J.

Even if the alien defendant attempts to waive filing of a "notice of intent to request deportation," such notice should be filed because the court has discretion to exercise or decline jurisdiction over the request. Any plea agreement should be consistent with the guidance provided above for stipulated administrative deportation. Similarly, as previously noted, the Rule 11 inquiry must establish a clear record that the alien concedes alienage and deportability, knowingly waives a hearing, accepts the order of deportation knowing that it will result in his deportation from the United States at the expiration of his sentence, and knowingly waives any right to appeal, reopen, or otherwise challenge the deportation order.

At least 30 days prior to the date set for sentencing, a document charging alienage and identifying the crime that causes the alien to be deportable under 8 U.S.C. § 1251(a) (2) (A) must be filed. The allegations in the charging document must be consistent with Department policy as set forth above in *General Concerns.* Since the filing of the charge requires "concurrence of the commissioner," such concurrence should be set forth on the charging document and signed by the INS District Director, or a letter referencing the charging document and signed by the INS District Director or other authorized INS official should be appended.[9]

### (3) Contested Judicial Deportation

In contested cases, it will be particularly important to coordinate with INS to ensure that the available evidence will be sufficient to establish alienage and deportability. For example, in view of the res judicata/collateral estoppel implications discussed above, a judicial finding that the government's evidence was insufficient to establish alienage might preclude any further efforts to deport the alien.

The notice of intent to request judicial deportation, as well as the charging document setting forth the Commissioner's concurrence, must be filed in a timely manner, as with stipulated deportations.

For purposes of determining whether to enter a deportation order, the court can only consider evidence that would be admissible in administrative deportation proceedings, where the rules of evidence are traditionally inapplicable. The INA requires only that the evidence in deportation proceedings be "reasonable, substantial, and probative." 8 U.S.C. § 1252(b)(4)

Essentially, the evidence in a deportation hearing must have probative value and be consistent with a fair hearing. For example, under immigration law, the INS administrative record pertaining to the alien

is admissible to establish alienage and immigration status. *See generally Gordon and Mailman, Immigration Law and Procedure*, § 72.04. The same rules should apply in judicial deportation proceedings. Under the statute, the alien is entitled to a reasonable opportunity to examine the evidence, to present evidence in his or her own behalf, and to cross-examine witnesses presented by the government. Prosecutors should seek the assistance of INS District Counsel if substantive issues of immigration law arise, or if there are issues about the admissibility of evidence at deportation proceedings.

The statute provides that the court may order the alien deported if the Attorney General demonstrates that the alien is deportable under the INA. With regard to the burden of proof in deportation hearings, the Supreme Court has held that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Woodby v. INS*, 385 U.S. 276 (1976). The same standard has been incorporated into INS regulations. 8 C.F.R. § 242.14.

As noted earlier, either party may appeal a judicial order of deportation or a denial of such an order to the court of appeals for the circuit in which the district court is located. Due to the above-noted ambiguity relating to the appeal procedures in the statute, the Department intends to minimize the number of appeals until corrective legislation can be enacted. Accordingly, contested judicial deportation should be pursued only in situations in which there is compelling evidence of alienage and deportability, and where the alien has no colorable claim of relief from deportation.

Finally, in connection with any judicial deportation proceeding, prosecutors may also request the court to provide for deportation as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d). As noted above, such an alien who reenters after deportation would be subject to immediate incarceration for violating the terms of supervised release in addition to prosecution for reentry after deportation.

1 Typically, these would include certain crimes involving moral turpitude, 8 U.S.C.§ 1251(a)(2)(A)(i) and (ii), or any aggravated felony, 8 U.S.C. § 1251(a)(2)(A)(iii). In addition, a plea to certain offenses relating to controlled substances, firearms, document fraud, and national security would cause an alien to be deportable. 8 U.S.C. § 1251(a)(2), (3) and (4).

2 A list of designated INS contacts is attached at Appendix A.

3 If deportability will be based on the conviction to which the alien will plead guilty, the alien must accept the deportation order at the time of sentencing. However, if deportability will be based on independent grounds, such as entry without inspection, the deportation order can be obtained prior to sentencing. In any event, the deportation order will not be executed until after sentencing and the service of any term of incarceration that is imposed.

4 Unlike a judicial order of deportation (see section IV *infra*) which may be entered only if a defendant is deportable based on certain criminal convictions, 8 U.S.C. § 1251(a)(2)(A), the court may provide for deportation as a condition of supervised release under section 3583(d) if the defendant is deportable for any reason. The most common grounds of deportation are entry without inspection and violation of nonimmigrant status.

5 Grounds for deportability under 8 U.S.C. § 1251(a)(2)(A), which encompass convictions for certain crimes involving moral turpitude and "aggravated felonies," are discussed at Appendix D.

6 However, the statute provides that nothing in it limits the information the court may receive for purposes of imposing sentence.

7 If the court determines that the defendant has presented substantial evidence to establish prima facie eligibility for relief from deportation, INS must provide the court with a report regarding the alien's eligibility for relief, 8 U.S.C. § 1252a(d)(2)(C). A more detailed discussion of the available relief from deportation is provided at Appendix I.

8 In addition to the judicial deportation procedure, section 130004 of the Violent Crime Control and Law Enforcement Act of 1994 creates expedited *administrative* procedures for the deportation of an alien who is not lawfully admitted for permanent residence, who has committed an aggravated felony, and who is not eligible for relief from deportation. Although this expedited administrative procedure provides the alien with a number of procedural protections, it dispenses with the need for an administrative hearing before an immigration judge. Regulations implementing this provision will issued soon.

9 The INS commissioner's concurrence authority has been delegated to the INS District Director of each INS District Office. Delegation down to the level of Assistant District Directors and to the Officer in Charge, where applicable, is also authorized.

Go to: Attorney General's FOIA Page// FOIA Home Page//Justice Department Home Page +

## CERTIFICATE OF SERVICE

I, DENG HUAYI, do hereby certify under the penalty of perjury, Title 28 U.S.C. §1746, that pursuant to RULE 5 of Fed.Rul.Civ.Proc. I caused to be sent a true copy of :

## MOTION TO AMMEND/CORRECT OR REDUCE THE SENTENCE

to the opposing party, namely the U.S.Attorney, after applying First-Class Postage and depositing it in the EDC MAILBOX.

Date: ___7-6-12___                          Signature,

DENG HUAYI

Reg #16835-064

EDEN C.I.

P.O.BOX 605

Eden, Texas 76837